```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION


IN RE MENTOR CORP. OBTAPE        *   MDL Docket No. 2004
                                     4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
                                     Case No.
LIABILITY LITIGATION             *   4:11-cv-5070 (A. Freeland)
```

O R D E R

Defendant Mentor Worldwide LLC ("Mentor") developed a suburethral sling product called ObTape Transobturator Tape ("ObTape"), which was used to treat women with stress urinary incontinence. Plaintiff Alice Freeland ("Freeland") was implanted with ObTape, and she asserts that she suffered injuries caused by ObTape. Freeland brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Freeland also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor contends that Freeland's claims are barred by the applicable statutes of limitation. For the reasons set forth below, the Court agrees, and Mentor's Motion for Summary Judgment (ECF No. 57 in 4:11-cv-5070) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Freeland, the record reveals the following. Unless otherwise noted, the facts are undisputed for purposes of Mentor's summary judgment motion.

Freeland is a resident of North Carolina. All medical treatment related to Freeland's claims occurred in South Carolina. In 2004, Freeland visited her urologist, Dr. William Bogache, because she was experiencing problems with incontinence. After discussing her options with Dr. Bogache, Freeland decided to undergo a transobturator sling procedure. Dr. Bogache implanted ObTape in Freeland on December 1, 2004. After the surgery, Freeland developed an infection and began to experience vaginal discharge and other symptoms, including problems with sexual intercourse. In March of 2005, Dr. Bogache

examined Freeland and found a vaginal erosion of the ObTape. He conducted a partial excision on April 6, 2005. It is undisputed that Dr. Bogache told Freeland that her ObTape had become unattached and was causing her problems with intercourse. Though Freeland's incontinence improved somewhat after the partial excision, her discharge did not. She was referred to another urologist, Dr. Ross Rames, for additional treatment. In September 2005, Dr. Rames diagnosed Freeland with another erosion of the ObTape. Dr. Rames performed a partial excision surgery in November 2005. Freeland underwent an additional excision surgery in October 2006. It is undisputed that after that surgery, Freeland did not experience any vaginal discharge she attributes to ObTape, though she does attribute continuing problems with incontinence and diarrhea to ObTape.

While Freeland was experiencing vaginal discharge symptoms, she conducted one internet search regarding bladder sling procedures because she believed that something may have gone wrong with the "procedure" and not the ObTape itself. Freeland Dep. 77:1-5, 80:16-18, ECF No. 60-3. The results of the internet search reassured Freeland because the statistics suggested that the complication rate for bladder sling surgery was low. Sometime later, without any additional research, Freeland changed her mind and began to believe that the statistics she had seen were false. *Id.* at 67:6-13. Freeland

3

testified that she changed her mind about the statistics at least five years before her deposition, which was taken on April 5, 2012. *Id.* at 68:14-19. Freeland nonetheless asserts that she did not suspect that ObTape might be defective until she saw a television ad regarding ObTape complications in 2011.

Freeland filed her Complaint on August 19, 2011. *See generally* Compl., ECF No. 1 in 4:11-cv-5070. Freeland brought claims under both tort and contract theories. Her tort theories are negligence, strict liability/defective design, strict liability/manufacturing defect, strict liability/failure to warn, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and violation of the South Carolina Unfair Trade Practices Act. Her contract theories are breach of implied warranties and breach of express warranties.

## DISCUSSION

The Judicial Panel on Multidistrict Litigation transferred Freeland's diversity action from the United States District Court for the District of South Carolina to this Court for pretrial proceedings. Therefore, the Court must apply the choice-of-law rules of South Carolina, the transferor forum, to determine which state law controls. *See Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005) (noting that law of transferor court must be applied in multidistrict litigation case); *see also Murphy v. Fed. Deposit Ins. Corp.*,

4

208 F.3d 959, 965 (11th Cir. 2000) ("Our system contemplates differences between different states' laws; thus a multidistrict judge asked to apply divergent state positions on a point of law would face a coherent, if sometimes difficult, task.") (internal quotation marks omitted).

In this action, Freeland and Mentor agree that South Carolina's statutes of limitation apply to Freeland's claims. "Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury occurred." *Boone v. Boone,* 546 S.E.2d 191, 193 (S.C. 2001). The law of the forum state must be applied to determine procedural matters. *Nash v. Tindall Corp.*, 650 S.E.2d 81, 83 (S.C. Ct. App. 2007). In this case, Freeland acknowledges that her injuries occurred in South Carolina, and South Carolina is the forum where she brought her action. Therefore, whether a statute of limitations is considered substantive or procedural under South Carolina law, it is clear that South Carolina law must be applied to Freeland's claims. The remaining question is whether Freeland's claims are barred under South Carolina's statutes of limitation.

The parties agree that Freeland's tort claims are subject to a three-year statute of limitations, S.C. Code Ann. § 15-3-530, while her warranty claims are subject to a six-year statute

5

of limitations, S.C. Code Ann. § 36-2-725. The only dispute between the parties relates to when Freeland's claims arose.

Under South Carolina's discovery rule, "the statute of limitations begins to run from the date the claimant knew or should have known that, by the exercise of reasonable diligence, a cause of action exists." *Holmes v. Nat'l Serv. Indus., Inc.*, 717 S.E.2d 751, 753 (S.C. 2011); *accord* S.C. Code Ann. § 36-2-725(2) ("A cause of action accrues for breach of warranty when the breach is or should have been discovered."). "The date on which discovery of the cause of action should have been made is an objective, rather than subjective, question." *Bayle v. S.C. Dep't of Transp.*, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001). "In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." *Id.* (internal quotation marks omitted).

Where there is no conflicting evidence "as to whether a claimant knew or should have known he had a cause of action," the Court may resolve the issue as a matter of law. *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998); *see also Barnes v. Schering Corp.*, 16 F.3d 408, No. 93-1638, 1994 WL 20110, at *2 (4th Cir. Jan. 26, 1994) (per curiam) (applying

6

South Carolina law). In *Barnes*, for example, the Fourth Circuit evaluated the claims of a plaintiff who claimed that she suffered injuries as a result of her mother's ingestion of the drug diethylstilbestrol (DES) while she was pregnant with the plaintiff. The plaintiff was aware that her mother had taken DES; the plaintiff was aware that she had numerous gynecological problems; and the plaintiff's doctor discussed with the plaintiff the association between her problems and DES. *Id.* at *1. The Fourth Circuit Court of Appeals found that only one conclusion could be drawn from the record evidence: the plaintiff knew or through the exercise of reasonable diligence should have known that she had a cause of action following the discussion with her doctor because that discussion "was sufficient to place her on notice of the possibility that her problems were caused by DES." *Id.* at *2; *see Bayle*, 542 S.E.2d at 741 (finding that the plaintiff's negligence cause of action against the transportation department accrued shortly after his wife's fatal car accident because he knew that his wife lost control of her car when she drove into a pool of water on the expressway and was therefore on notice that the accident was potentially caused by the transportation department's negligence); *Young v. S.C. Dep't of Corr.*, 511 S.E.2d 413, 416 (S.C. Ct. App. 1999) (finding that inmate should have been aware that prison officials' delay in obtaining medical treatment may

7

have exacerbated his symptoms when two separate doctors expressed concern about the delay); *see also Snell v. Columbia Gun Exch., Inc.*, 278 S.E.2d 333, 335 (S.C. 1981) (per curiam) (finding that pistol owner was on notice of a possible defect in the pistol he purchased when the pistol "accidentally and unexplainedly" discharged).

Freeland argues that her cause of action against Mentor did not accrue until she knew of her injury, knew the injury was caused by ObTape, *and* knew that ObTape might be defective. Freeland, however, pointed the Court to no South Carolina authority that supports such a rule. Rather, the cases interpreting South Carolina law indicate that a plaintiff's product liability cause of action accrues when the plaintiff has information sufficient to place her on notice of the possibility that her injury was caused by a certain product. *E.g., Barnes*, 1994 WL 20110, at *2. Here, Freeland knew in April of 2005 that her ObTape had become unattached and was causing certain symptoms. At that time, a person of common knowledge and experience in Freeland's position would have been on notice that her injuries may be related to ObTape and would have been able to begin an investigation to determine whether those injuries were caused by a problem with ObTape, a problem with the implantation surgery, or some other problem. For these reasons, the Court finds that no genuine fact dispute exists as to when

Freeland's claims accrued. Her claims accrued in April of 2005. Freeland did not file her Complaint until August 19, 2011—more than six years after her cause of action accrued. Therefore, both her tort claims and her breach of warranty claims are barred by the applicable statutes of limitation, and Mentor is entitled to summary judgment on Freeland's claims.[1]

## CONCLUSION

For the reasons set forth above, Mentor's Motion for Summary Judgment (ECF No. 57 in 4:11-cv-5070) is granted.

IT IS SO ORDERED, this 11th day of February, 2013.

S/Clay D. Land<br>CLAY D. LAND<br>UNITED STATES DISTRICT JUDGE

---

[1] To the extent that this holding may appear to be inconsistent with the Court's previous holding under Georgia law in *In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation,* 711 F. Supp. 2d 1348 (M.D. Ga. 2010), the Court finds that South Carolina law has not been as broadly interpreted as the Eleventh Circuit seemed to interpret Georgia law in *Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992). South Carolina law makes it clear that the statute of limitations begins to run when a person of reasonable diligence should have made a connection between the product and her injuries, not when the person determines that a defendant's conduct which caused the injuries may have been wrongful.